******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ERIC STIGGLE
(AC 36410)

DiPentima, C. J., and Prescott and Pellegrino, Js.

*Argued October 8, 2014—officially released January 20, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Devlin, J.)

*Stephanie L. Evans*, assigned counsel, for the appellant (defendant).

*Emily D. Trudeau*, deputy assistant state's attorney, with whom, on the brief, was *John C. Smriga*, state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Eric Stiggle, appeals from the denial of his motion to vacate his guilty pleas. On appeal, the defendant claims that (1) the trial court abused its discretion by denying his motion because he was not competent when he pleaded guilty, (2) the court conducted an inadequate canvass, and (3) his trial counsel rendered ineffective assistance.[1] We disagree, and affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The defendant was charged with numerous crimes related to the kidnapping of the victim, his then wife. On August 23, 2010, the court, *Emons*, *J.*, set bond in the amount of $1,000,000. During the hearing, the defendant made many threatening comments regarding the victim and was held in contempt of court. At this time, the defendant's counsel informed the court that the defendant had a competency evaluation pending in another case and that his behavior in the court was due to some mental disabilities. Accordingly, the contempt finding was vacated, and the court continued the matter until the competency evaluation was completed.

On September 21, 2010, after learning that the defendant posted his bond by fraud,[2] and before the completion of the competency evaluation, the court, *Thim*, *J.*, modified the defendant's bond to $1,000,000 cash. The defendant did not petition for a review of this modification pursuant to General Statutes § 54-63g.[3] Later, at the defendant's competency hearing on October 26, 2010, the court found that he understood the proceedings against him and was able to assist in his defense, and therefore was competent to stand trial.

On December 22, 2011, the defendant pleaded guilty to assault in the second degree in violation of General Statutes § 53a-60 (a) (2), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), unlawful restraint in the first degree in violation of General Statutes § 53a-95, and larceny in the second degree in violation of General Statutes §§ 53a-119 and 53a-123 (a) (1). The defendant was canvassed in open court in accordance with Practice Book §§ 39-19, 39-20, and 39-21,[4] following which his guilty pleas were accepted.

On January 9, 2012, before the defendant was sentenced, he filed a pro se motion to vacate his guilty pleas. In that motion, the defendant argued that he is mentally ill, and that at the time of his guilty pleas, his medication was low and his trial counsel failed to inform him of how the state would use facts related to his charges. The motion also contained an additional separate claim that his trial counsel was ineffective.

Prior to the court's hearing evidence on this motion, the defendant's appointed counsel requested another

competency hearing, which took place on April 23, 2012. The court again found the defendant competent. After the second competency hearing, the court conducted an evidentiary hearing on a motion filed by the defendant seeking to vacate his guilty pleas. At the evidentiary hearing, the defense called Rena Kapoor, a psychiatrist. Kapoor evaluated the defendant on three occasions and gave three diagnoses of the defendant's condition: personality disorder with antisocial and narcissistic traits, bipolar disorder, and alcohol dependence. Kapoor did not opine as to the defendant's mental state at the time of his plea. The state called Sally Kostant, a nurse clinician who treated the defendant. Kostant testified that she was familiar with his medications, and that his medical records reflected compliance with his medications during December, 2011, the time period surrounding the defendant's guilty pleas. Kostant saw the defendant twice during December, 2011, and noted that when she saw the defendant after his guilty pleas, he had stable presentation and appeared angry but rational.

In a December 26, 2012 memorandum of decision, the court, *Devlin*, *J.*, denied the defendant's motion to vacate his guilty pleas. The court sentenced the defendant to a total effective term of twenty-three years of incarceration, execution suspended after seventeen years, followed by five years of probation. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the court abused its discretion when it denied his motion to vacate his guilty pleas. Specifically, the defendant contends that his guilty pleas should be vacated because (1) at the time of his guilty pleas, he was not mentally competent and his medication was low, (2) the court conducted an improper canvass, and (3) his trial counsel was ineffective. We discuss each of these claims in turn.

I

The defendant first argues that his motion to vacate his guilty pleas was improperly denied because he was not mentally competent on the day he entered his pleas, and, therefore, his pleas were not knowingly, voluntarily, and intelligently made. Despite framing the issue this way, the defendant focuses his analysis solely on his competency at the time of the plea. "It is clear, however, that the defendant has conflated the inquiry regarding a knowing and voluntary plea with the issue of his competency, despite these being two separate issues. The purpose of the knowing and voluntary inquiry is to determine whether the defendant actually understands the significance and consequences of a particular decision and whether the decision is uncoerced. . . . The focus of a competency inquiry, by contrast, is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings." (Citation omitted; internal quotation marks omit-

ted.) *State* v. *Ducharme*, 134 Conn. App. 595, 599, 39 A.3d 1183, cert. denied, 305 Conn. 905, 44 A.3d 181 (2012).

"We review the court's determination of competency under an abuse of discretion standard." Id., 600. General Statutes § 54-56d (a) provides in relevant part that "a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense." Moreover, when making the determination as to "whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . . Essentially, we examine the relevant record to determine whether the trial court reasonably could have concluded that the defendant was competent to plead guilty. In doing so, we give deference to the trial court's findings of fact because the trial court has the benefit of firsthand review of the defendant's demeanor and responses during the canvass." (Citation omitted; internal quotation marks omitted.) *State* v. *Ducharme*, 134 Conn. App. 600. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *State* v. *Davalloo*, 153 Conn. App. 419, 431, 101 A.3d 355, cert. granted on other grounds, 314 Conn. 949, A.3d (2014).

The defendant claims that his pleas of guilty were not knowing, intelligent, and voluntary because, at the time that he entered his pleas, his medication was low, he was acting under impulse, was stressed, and in a manic state. Given our review of the record, we find this argument to be unpersuasive. The trial court set forth the factual findings it relied upon in ruling on the defendant's motion to vacate his guilty pleas. Specifically, the court found that "[the defendant] understood what was going on, he wanted to resolve the matter, wanted to get it behind him and, while he thought the sentence was overly harsh, he was prepared to accept it; and while he didn't agree with every single detail the prosecutor put on the record, he basically agreed it was a correct statement of what happened. . . . And I thought it was a validly entered plea, and I still do." These findings are adequately supported by the evidence adduced at the defendant's competency hearing and, therefore, are not clearly erroneous. Moreover, they are sufficient to support the court's conclusion that the defendant's pleas were entered knowingly, intelligently, and voluntarily.

"The distinction that one can be competent to stand trial but not competent to plead guilty was considered

and rejected by the United States Supreme Court in *Godinez* v. *Moran*, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993)." *State* v. *Ducharme*, supra, 134 Conn. App. 603. The United States Supreme Court determined that the competency standard for trial and to plead guilty is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." (Internal quotation marks omitted.) *Godinez* v. *Moran*, supra, 396.

During Judge Devlin's canvass, the defendant stated that he was on medications, but that he clearly understood the proceedings. Further, he stated that he was satisfied with the legal advice he received from his attorney. Last, he stated that he understood the four charges to which he pleaded guilty. Thus, the defendant was able to consult his lawyer with a reasonable degree of rational understanding, and answered affirmatively as to whether he had a factual understanding of the proceedings against him. Therefore, the court did not abuse its discretion by finding that the defendant was competent when he entered his guilty pleas in accordance with the standard set forth in *Moran*.

## II

The defendant next claims that the court conducted an improper plea canvass by failing to comply substantially with Practice Book § 39-19 (1). As a result, he contends, his guilty pleas were not knowingly, voluntarily, and intelligently made. The defendant acknowledges that this claim was not raised in his trial motion and therefore requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5]

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) Id. The first two prongs of *Golding* are satisfied by the defendant, but the claim fails under the third prong because there was no constitutional violation during the plea canvass, as the defendant claims.

The defendant contends that the court did not comply with the Practice Book §§ 39-19 and 39-20 in the following ways: The court did not ask him whether he discussed the nature of the charges with his appointed

counsel; the court failed to advise him of the elements of larceny; the court incorrectly stated the elements of unlawful restraint; and the court did not inquire on the record whether the defendant's willingness to plead guilty resulted from prior discussions between the prosecuting authority and the defendant or his counsel. Yet, because the defendant's claim is unpreserved, review of it is limited to whether the canvass was constitutionally adequate under the third prong of *Golding*. We do so by applying the standards set forth in *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). See *State* v. *Ducharme*, supra, 134 Conn. App. 604–607 and 606 n.7.

This court in *Ducharme*, when rejecting the defendant's claim that his plea was not knowing and voluntary, stated: "[P]recise compliance with the provisions [of the Practice Book] is not constitutionally required. . . . Accordingly, this court's analysis focuses on whether the federal constitutional principles were satisfied rather than on scrupulous compliance with the provisions of the rules of practice." (Citation omitted; internal quotation marks omitted.) Id., 605–606. In this case, the plea canvass started as follows:

"The Court: All right. Have you had enough time to think about your decision to plead guilty to these charges?

"[The Defendant]: Pretty much.

"The Court: Okay. Have you talked with your lawyer; Attorney [William R.] Schipul, about the nature of these charges and their elements, and their penalties and the evidence that the state claims it has to prove that you're guilty? Have you talked about that?[6]

"[The Defendant]: Pretty much.

"The Court: Okay. Are you satisfied with the legal advice you've received from your lawyer?

"[The Defendant]: Pretty much.

"The Court: Okay. Now, when you say, pretty much, I'm taking that to mean that—

"[The Defendant]: Satisfied.

"The Court: Okay." (Footnote added.)

When evaluating the federal constitutional principles, this court must look to the requirements stated in *Boykin*. Under *Boykin*, a defendant must be cognizant prior to entering a guilty plea of the following three constitutional rights: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's own accusers. *Boykin* v. *Alabama*, supra, 395 U.S. 243.

The following colloquy that occurred between the court and the defendant during the plea canvass shows that the principles in *Boykin* were met:

"The Court: . . . All right. The main point I need to ask about . . . is this: you need to understand that by pleading guilty to these charges you are giving up your right to have a trial on these charges. Do you understand that?

"[The Defendant]: Yes.

"The Court: In other words, you could continue with your not guilty plea and elect a trial in front of either a judge or a jury where the state would have to prove that you were guilty beyond a reasonable doubt. Do you understand that?

"[The Defendant]: Yes, I do.

"The Court: And if you had a trial, you'd have a right to the assistance of your lawyer; you could confront and cross-examine any of the witnesses that the state called against you; you could call witnesses on your own side of the case; you could testify if you wanted to at your trial or you wouldn't have to, you could keep silent, and nobody could make you testify or incriminate yourself, it would be your choice; you could also assert any legal or factual defenses that you might have to these charges. But by pleading guilty, you give up all those rights. Do you understand that?

"[The Defendant]: Yes.

"The Court: Okay. Is your plea voluntary and of your own free will?

"[The Defendant]: Yes.

"The Court: Is anybody threatening you or forcing you in any way to get you to plead?

"[The Defendant]: No."

It is clear from the record that the defendant was apprised of his constitutional rights and that there was no violation of the principles set forth in *Boykin*. The defendant was told about, and responded affirmatively to his understanding of, his right to not incriminate himself, his right to trial by jury, and his right to confront his own accusers. "A defendant can voluntarily and understandingly waive these rights without literal compliance with the prophylactic safeguards of Practice Book [§§ 39-19 and 39-20]. Therefore . . . precise compliance with the provisions [of the Practice Book] is not constitutionally required." (Internal quotation marks omitted.) *State* v. *Ducharme*, supra, 134 Conn. App. 605–606. Because the *Boykin* requirements were met, there was no procedural error, and no constitutional violation exists that deprived the defendant of a fair trial.

### III

Finally, the defendant argues that his trial counsel rendered ineffective assistance, and therefore the court abused its discretion when it denied the defendant's

motion to vacate his guilty pleas. We disagree.

"The following legal principles and standards inform our review of the court's decision. Before a guilty plea is accepted a defendant may withdraw it as a matter of right. Practice Book [§ 39-26]. After a guilty plea is accepted but before the imposition of sentence the court is obligated to permit withdrawal upon proof of one of the grounds in [Practice Book § 39-27]. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Citation omitted; internal quotation marks omitted.) *State* v. *Gay*, 108 Conn. App. 211, 216–17, 947 A.2d 428, cert. denied, 288 Conn. 913, 954 A.2d 186 (2008). If a defendant believes that he received ineffective assistance of counsel, he can move to vacate his guilty pleas under Practice Book § 39-27 (4).

"A defendant must satisfy two requirements . . . to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. . . . First, he must prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law . . . . Second, there must exist such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. . . . In addressing this second prong, the United States Supreme Court held in *Hill* v. *Lockhart*, 474 U.S. 52, [59] 106 S. Ct. 366, 88 L. Ed. 2d 203 [1985], that to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . The resolution of this inquiry will largely depend on the likely success of any new defenses or trial tactics that would have been available but for counsel's ineffective assistance. . . . A reviewing court can find against the [defendant] on whichever ground is easier." (Citation omitted; internal quotation marks omitted.) *State* v. *Gay*, supra, 108 Conn. App. 217–18.

The defendant argues that he never had adequate discussions with his attorney about the nature of the charges, which rendered the defendant's appointed counsel ineffective. Contrary to this proposition, however, the defendant stated on the record that he was satisfied with the legal advice he received from his attorney. In *State* v. *Sutton*, 95 Conn. App. 139, 145, 895 A.2d 805, cert. denied, 278 Conn. 920, 901 A.2d 45 (2006), this court, in ruling that the trial court did not abuse

its discretion in denying the defendant's motion to withdraw his guilty plea on the basis of ineffective assistance of counsel, noted that, at the time of the plea, the defendant had affirmed and was satisfied with counsel's advice.

Additionally, the defendant argues that "the fact that [appointed counsel] failed to advise the court of [the defendant's] highly aggressive and agitated state . . . overwhelmingly suggests that [the defendant] was denied effective assistance of counsel at a critical stage of the proceeding." This second argument is unpersuasive as well. The court already was aware of the defendant's mental health issues because the court had conducted a competency hearing prior to the plea canvass. Moreover, the hearing on December 22, 2011, was not the first time the defendant was before Judge Devlin.

The defendant stated during his plea canvass that "[a]ll I got to say, Your Honor, is, I know, and I got to accept responsibility for my actions and I—I said on the record that I'm guilty, but I don't feel that the punishment that the court's about to impose on me warrants that. I don't think the court took in consideration my mental health issues. But that's neither here or there. I mean, I still love my ex-wife, I still care about her. And I'm wrong and I should be punished. I just want to go on with my life." This contention, that he knew he pleaded guilty and thought that his punishment did not fit the crime, does not amount to proof that he would have pleaded not guilty and insisted on going to trial but for his appointed counsel's alleged ineffectiveness.

The defendant's argument is further weakened by his affirmative answer during the canvass to the trial court's question as to whether he understood that he could continue with a not guilty plea and elect a trial in front of either a judge or a jury, and that if he elected to go to trial, the state would need to prove its case beyond a reasonable doubt. This is further proof that the defendant has not shown that there was a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty and insisted on going to trial. Although Practice Book § 39-27 (4) provides grounds for allowing a defendant to withdraw his guilty plea after its acceptance, in this case, trial counsel was effective and, therefore, there was no abuse of discretion in denying the defendant's motion to vacate his guilty pleas.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also claims that the court violated his state constitutional right to due process and violated General Statutes § 54-64f by failing to conduct an evidentiary hearing, and finding by clear and convincing evidence that he had violated a condition of his release before modifying those conditions. We do not reach the merits of this claim because it is moot.

"General Statutes § 54-63g allows defendants to seek immediate review of

an allegedly unauthorized condition of pretrial release." (Footnote omitted.) *State* v. *Hopkins*, 62 Conn. App. 665, 679, 772 A.2d 657 (2001). "It is axiomatic that the exclusive method to challenge an order pertaining to bail is to file a petition for review with this court pursuant to . . . § 54-63g." *State* v. *Crosby*, 125 Conn. App. 775, 781, 9 A.3d 794 (2011). Here, because the defendant filed no such petition and has already been sentenced, "[w]e cannot . . . afford the defendant any practical relief on a claim concerning conditions of pretrial release. . . . As such, the claim is moot and we do not have jurisdiction to afford review." (Citation omitted.) *State* v. *Hopkins*, supra, 679.

[2] The defendant allegedly represented in a letter to the bondsman that there were funds on deposit in his account to pay the bond. The letter was addressed to the defendant and signed by a David Moreshead, an attorney who was deceased as of the date on the letter.

[3] General Statutes § 54-63g provides in relevant part: "Any accused person or the state, aggrieved by an order of the Superior Court concerning release, may petition the Appellate Court for review of such order. Any such petition shall have precedence over any other matter before said Appellate Court and any hearing shall be heard expeditiously with reasonable notice."

[4] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge . . . ."

Practice Book § 39-20 provides in relevant part: "The judicial authority shall not accept a plea of guilty . . . without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty . . . results from prior discussions between the prosecuting authority and the defendant or his . . . counsel."

Practice Book § 39-21 provides: "The judicial authority shall not accept a plea of guilty unless it is satisfied that there is a factual basis for the plea."

[5] The defendant also seeks relief under the plain error doctrine pursuant to Practice Book § 60-5. We are not persuaded that this claim warrants reversal under the plain error doctrine.

[6] The defendant claims that because this question was not asked again when the court, *Devlin*, *J.*, stated after a brief colloquy with him that it would canvass him again, the court did not comply with Practice Book § 39-19 (1).